K-Land Lex 47th LLC v Lex 47th Prop. Owner LLC (2023 NY Slip Op 50724(U))

[*1]

K-Land Lex 47th LLC v Lex 47th Prop. Owner LLC

2023 NY Slip Op 50724(U)

Decided on July 13, 2023

Supreme Court, New York County

Borrok, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 13, 2023
Supreme Court, New York County

K-Land Lex 47th LLC, Plaintiff,

against
Lex 47th Property Owner LLC, Lex 47th Development LLC, First American Title Insurance Co., Defendant.

Index No. 652634/2021

Plaintiffs by:
Morrison Cohen LLP, 909 Third Avenue, New York, NY 10022
Defendants by:
Muchmore & Associates PLLC, 84 Withers St, Floor 4, Brooklyn, NY 11211
Butler, Fitzgerald, Fiveson & McCarthy PC, 9 E 45th St., Floor 9, New York, NY 10017

Andrew Borrok, J.

The following e-filed documents, listed by NYSCEF document number (Motion 003) 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 181, 182, 183, 186, 188, 189, 190, 191, 192, 272, 273, 276, 278, 280, 281, 282, 283, 284, 285, 286, 287, 288, 289 were read on this motion to/for SUMMARY JUDGMENT(AFTER JOINDER).
The following e-filed documents, listed by NYSCEF document number (Motion 004) 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 184, 185, 187, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 220, 221, 222, 223, 224, 225, 226, 227, 228, 229, 230, 231, 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, 242, 243, 244, 245, 246, 247, 248, 249, 250, 251, 252, 253, 254, 255, 256, 257, 258, 259, 260, 261, 262, 263, 264, 265, 266, 267, 268, 269, 270, 271, 274, 275, 277, 279 were read on this motion to/for JUDGMENT - SUMMARY.
Lex 47th Property Owner (the Purchaser) is entitled to summary judgment because there are no material issues of fact for trial as to whether the Purchaser failed to act in good faith to finalize the EB-5 transaction documents on substantially similar terms to those set forth in the [*2]EB-5 LOI prior to April 1, 2020 and whether any action or inaction of the Purchaser caused any harm to the Seller (Alvarez v. Prospect Hosp., 68 NY2d 320, 324 [1986]).
As discussed below, and fatal to the claim, the fully developed record makes clear that the EB-5 Investor indicated that it could not get the deal done by April 1, 2020 and made no real attempt to do so. For the avoidance of doubt, the Seller confirmed at oral argument (7.12.23), that no deposition testimony was obtained of the EB-5 Investor suggesting otherwise and the EB-5 Investor would not be available to testify at trial. Thus, there are no issues of fact as to whether, under the circumstances, the Purchaser failed to act in good faith in a manner which damaged the Seller because when it received communication that the EB-5 Investor could not consummate the deal by April 1, 2020 and did not receive transaction documents until after that, it was then not a "high priority" to finalize the EB-5 transaction documents.
Reference is made to a certain Purchase and Sale Agreement (the PSA; NYSCEF Doc. No. 9), dated December 3, 2019, by and between Purchaser and K-Land Lex 47th LLC (the Seller) pursuant to which the parties agreed that the Seller would sell and the Purchaser would purchase a certain plot, piece and parcel of land identified in the PSA Pursuant to the PSA, the parties further agreed that if the Purchaser was able to obtain an EB-5 preferred equity investment by April 1, 2020 on substantially similar terms as those set forth in the EB-5 LOI, $1,500,000 which was escrowed pursuant to the PSA would be promptly disbursed to the Seller, but if the Purchaser was not able to obtain such EB-5 preferred equity investment by such date, the purchase price would be reduced by $1,500,000:
(i) if AAF6 and Purchaser do not enter into the EB-5 Transaction Documents on or prior to April 1, 2020 for the EB-5 Investment for any reason (including the termination of negotiations regarding the EB-5 Investment by Purchaser or AAF6, subject to clause (iii) below, each in their sole discretion) then the Purchase Price shall be deemed to have been reduced by One Million Five Hundred Thousand and No/100 Dollars ($1,500,000) (the "Maximum EB-5 Price Adjustment Amount"), in which case the Maximum EB-5 Price Adjustment Amount shall promptly be disbursed from the Holdback to Purchaser;
(ii) if AAF6 and Purchaser enter into the EB-5 Transaction Documents on or prior to April 1, 2020 for the EB-5 Investment, then (x) Seller shall reimburse Purchaser for all third-party, out-of-pocket costs and expenses actually incurred by Purchaser in connection with the EB-5 Investment (other than legal costs incurred by Purchaser in connection with drafting and negotiating any preferred joint venture or loan documents necessary to facilitate the EB-5 Investment) which costs and expenses shall be substantiated by reasonable written evidence, including but not limited to invoices, including costs of updating the existing information memorandum of AAF6 (if required) and any costs for processing changes to the existing applications with the U.S. Government (collectively, "Reimbursed AAF6 Costs"), provided, however, in no event shall Seller be responsible for reimbursing the Purchaser with respect to the Reimbursed AAF6 Costs for in amount in excess of One Hundred Twenty Thousand and No/100 Dollars ($120,000.00), and (y) the Purchase Price shall be deemed to have been reduced as follows: (1) if the preferred equity investment made by AAF6 is equal to or greater than Eight Million and No/100 Dollars ($8,000,000.00), an amount equal to Zero Dollars ($0), (2) if the preferred equity investment made by AAF6 is less than Eight Million and No/100 Dollars ($8,000,000.00) but greater than or equal to Five Million and No/100 Dollars ($5,000,000.00), an amount equal to Four Hundred Thousand and No/100 Dollars [*3]($400,000), (3) if the preferred equity investment made by AAF6 is less than Five Million and No/100 Dollars ($5,000,000.00) but greater than or equal to Five Hundred Thousand and No/100 Dollars ($500,000.00), an amount equal to Seven Hundred Fifty Thousand and No/100 Dollars ($750,000) (collectively the "EB-5 Price Adjustment Amount"). The aggregate of the Reimbursed AAF6 Costs and the EB-5 Price Adjustment Amount shall be promptly disbursed from the Holdback to Purchaser after the AAF6 and Purchaser enter into the EB-5 Transaction Documents, and Seller shall be entitled to receive the remainder of the Maximum EB-5 Price Adjustment Amount (i.e. an amount equal to the Maximum EB-5 Price Adjustment Amount less the sum of the Reimbursed AAF6 Costs and the EB-5 Price Adjustment Amount)
(NYSCEF Doc. No. 9 §38[b][i] and [ii]).
To be clear, the PSA does not impose any obligation on the Purchaser to obtain an EB-5 equity investment. Nor does the PSA provide that obtaining an EB-5 equity investment was a condition to consummating the transaction. Rather, the parties agreed to a very limited obligation. To wit, Section 38 of the PSA merely requires the Purchaser to act in good faith in trying to obtain the EB-5 equity investment by April 1, 2020:
38. EB-5 TERMS.
(b) AAF6 Investment. The parties anticipate that, promptly following Closing, AAF6 and Purchaser will enter into definitive documents (the "EB-5 Transaction Documents") pursuant to which AAF6 will make a preferred equity investment into an affiliate of Purchaser on substantially the same terms as those set forth in that certain Letter of Intent entered into on the date hereof (the "EB-5 LOI") by AAF6 and Purchaser (the "EB-5 Investment"). Seller hereby agrees that:
(iii) Purchaser agrees to negotiate in good faith to finalize the EB-5 Transaction Documents on substantially similar terms to those set forth in the EB-5 LOI prior to April 1, 2020.
For the avoidance of doubt, in no event shall the foregoing be deemed to create any obligation on the part of either AAF6 or Purchaser to enter into the EB-5 Transaction Documents or otherwise engage in any transaction with respect to the EB-5 Investment. No legal or other obligation of any kind will be created with respect to the EB-5 Investment unless and until definitive EB-5 Transaction Documents are negotiated and executed by all parties.
(NYSCEF Doc. No. 9 § 38[b][iii] [emphasis added]). As discussed above, if the Purchaser was successful, the $1,500,000 escrow would be immediately released to the Seller.
In this case, relying on certain self-serving emails sent by the EB-5 Investor (which self-serving emails are contradicted by their own internal communications and the responses they received from the Purchaser) and the deposition testimony of the general counsel of the Purchaser who indicated that after the EB-5 Investor said it could not do the deal by April 1, 2020 and requested extension of the deadline, it was not a "high priority" to finalize the documents, the Seller argues that the Purchaser breached Section 38 of PSA. The arguments fail and there are no issues of fact for trial.
More specifically, as the record unequivocally demonstrates, the Purchaser did not delay or otherwise fail to act in good faith. The LOI which was signed by the EB-5 investor specifically provides that for a preferred equity investment not a loan:

[*4]The Investment:

AAF6 shall invest up to $11,000,000 in preferred equity of the Company (the "Investment"). The final Investment will be reduced from $11,000,000 to reflect valid withdrawals made by the Immigrant Investors prior to the closing of the Transaction Documents

(NYSCEF Doc. No. 170, Exhibit A [emphasis added]).
The LOI was signed in mid-December and immediately after the Christmas holidays, the Purchaser requested that the EB-5 Investor prepare transaction documents to do the deal as a preferred equity investment (NYSCEF Doc. No.11). Indeed, on the record, it was the EB-5 Investor who moved at a snail's pace. They did not send out the initial draft of the transaction documents until March 12, 2020—approximately 90 days after the LOI was signed, 10 days after they said they could not get the deal done by April 1, 2020 and a mere 2 weeks before the April 1, 2020 deadline:
From: Du Yan singhua [duyan&commat;tsinghua.org.cn] on behalf of Du Yan singhua [duyan&commat;tsinghua.org.cn]
Sent: 3/2/2020 3:01:57 PM
To: 611875&commat;hopson.com.cn
CC: "Henrich Huang" [611476&commat;hopson.com.cn]; 611237&commat;hopson.com.cn; 611558&commat;hopson.com.cn; "dengwei20l7" [dengwei2017&commat;vip.sina.com]
Subject: AAF6 Agreement
Hi Hui Zi,
We understand that the COVID-19 pandemic has affected the progress and decision-making of the LEX47 Project in New York, and it will also cause certain delays. I hope the project is back on track as soon as possible! Please let us know if you need us to do anything.
Regarding the question of how the EB5 funds should be invested in the Hopson US project company, we have been waiting for your opinion after eight rounds of communications, but there was no clear response from you. Therefore, the agreement between the Hopson LEX47 project company and AAEB5 FUND6 cannot be executed at present. As a result, the parties will be unable to finalize the agreement on the EB-5 investment before April 1, 2020, thereby affecting the implementation of the PSA agreement.
We understand that the pandemic has delayed the progress of decision-making, so we also recommend extending the above-mentioned deadline for signing the EB-5 investment agreement as appropriate.
Thank you.
Yan Du
(NYSCEF Doc. No. 144 [emphasis added]).
When the EB-5 Investor finally did get around to sending out the initial draft of the transaction documents, it was the EB-5 Investor who again said that they could not get the deal done by April 1, 2020 and requested extension:
From: [duyan&commat;tsinghua.org.cn]
On behalf of [duyan&commat;tsinghua.org.cn]
Sent: 3/23/2020 4:43:15 PM
To: 'dengwei2017' [dengwei2017&commat;vip.sina.com]
Subject: EB5/Hopson
Hi Vivian
Hope this email finds you well and healthy.
Firstly, I would like to introduce Victor to you via this email. Victor is the president of the Regional Center (AANYRC) which manages LEX47 EB-5 Program and also the managing member of AAEB5 FUND6. He is very experienced in EB-5 practices, especially the relevant rules and regulations. The Side Letter of PSA regarding EB-5 matters was negotiated and finalized mainly relying on the communications among Victor, Celia and other lawyers. Victor is based in San Francisco, you can contact each other directly if needed on the Transaction Documents.
In addition, the executed PSA set a deadline for us to reach agreement on the Transaction Documents before Apr. 1, 2020.I think It is difficult to finish on time. We suggest that the deadline be extended, say, to June 1. We will draft a memo on this if you agree.
Take care in this special time, and let me know if there is anything I can help.
Best Regards
Yan Du
(NYSCEF Doc. No. 152 [emphasis added]).
Simply put, the record is bereft of any evidence contradicting these emails and otherwise indicating that the EB-5 Investor would or could get the deal done by April 1, 2020. Thus, nothing the Purchaser could have done (but allegedly failed to do) would have gotten the deal done by April 1, 2020 and it does not matter that the internal lawyer for the Purchaser who was hired in mid-March was not provided with the EB-5 LOI when he provided his initial comments to the transaction documents on March 31, 2020. As discussed above, nothing he could have done would have gotten the deal done anyway and it does not matter that the Purchaser may have tried to negotiate for more favorable terms at this point than was in LOI in any event (IDT Corp. v Tyco Group, S.A.R.L, 23 NY3d 497, 503-504 [2014]). For completeness, the Court notes that the Seller confirmed on the record (7.12.23), that the EB-5 Investor would not be available for trial to testify otherwise — i.e., that they would or could have committed to a fire drill to get the deal done following their self-imposed delays by April 1, 2020.
For the avoidance of doubt, the fully developed record (including the LOI, the communications between the parties, and the internal communications of the EB-5 Investor) [NYSCEF Doc. No. 170, Exhibit A; NYSCEF Doc. No. 140 at 1; NYSCEF Doc. No. 141 at 2]) also makes clear that the EB-5 Investor always understood that the investment was a preferred equity investment and not a loan and that it was the EB-5 Investor who delayed in sending out the transaction documents so that it could continue to hondle the Purchaser to try to change the structure of the deal:
To: Victor Shum [mailto:vshum&commat;aaeb5.com]
Date: January 28, 2020 10:20
To: Bonnie Cao ; 'Calvin Chan' ; 'Bentley Z'
From: Julia Park ; 'df' ; Bonnie Cao 25
RE: AAF6 Letter to Members re Reinvestment
Ms. Du,
I just want to let you know that I reached out to Celia from Hopson on the equity vs. loan structure. She specifically requested to go forward with the equity structure (and even asked us to prepare first draft of investment documents), and not the loan structure. We are preparing those documents (LLC Agreement for the new JCE) in response to her request. I am not sure she fully understands the equity vs. loan structure so I will push again during my next communication with her.
We will send you a copy of the draft LLC Agreement before sending to Hopson.
Best regards,
Victor
(NYSCEF Doc. No. 141 at 2).
Thus, it does not matter that the EB-5 Investor sent certain subsequent self-serving communications trying to negotiate again for a loan investment opportunity and not preferred equity. The Purchaser had no obligation to change the structure of the deal with the EB-5 Investor from preferred equity to a loan or to extend the April 1, 2020 deadline either pursuant to the PSA or the LOI. And, in any event, the Purchaser (i) explained (x) why it needed to be a preferred equity investment and (y) that the lender would not likely be available to discuss additional debt given the Chinese New Year and (ii) in fact pushed the EB-5 Investor to get started with the documents for the preferred equity investment:
From: Celia Lian
Sent: Monday, January 20, 2020 1:12 AM
To: Victor Shum Cc: Julia Park ; 611476
Subject: Re: EB5 Investment Definitive Agreement
Hi Victor,
We are searching for developer of this project. Most likely an equity developer, but can also be fee developer, subject to our board's decision. Either way, The schedule is to choose the developer by mid March. (Chinese New Year this week until 2 Feb)
For this project, we are currently working with Emerald Creek on a bridge loan that ends in early March and CITIC will grant another bridge loan for a term of up to 12 months, then land loan and construction loan. I need to discuss with the bank and get back to you on this.
While we are working with relative parties on above, do you think it's possible to get started with documents preparation? Thanks.
Regards, Celia Lian
(NYSCEF Doc. No. 140).
Thus, the Purchaser's motion for summary judgment must be granted.
For the reasons set forth above, the Seller's motion for summary judgment must be denied.
The Court has considered the Seller's remaining arguments and finds them unavailing.
It is hereby ORDERED that the Purchaser's motion for summary judgment is granted; and it is further
ORDERED that the Seller's motion for summary judgment is denied.
Dated: July 13, 2023
Andrew Borrok, J.S.C.